**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| MILDRED MOSER, individually and on behalf of all others similarly situated, | ) | Civil Action No. 2:25-CV-20 |
| *Plaintiff,* | ) | Cause No.: 24AU-CC00068<br>Audrain County, Missouri |
| v. | ) | NOTICE OF REMOVAL<br>(Pursuant to 42 U.S.C. § 233(*l*)(2) and 28 U.S.C. § 1442(a)(1)) |
| EAST CENTRAL MISSOURI BEHAVIORAL HEALTH SERVICES, INC. D/B/A ARTHUR CENTER COMMUNITY HEALTH | ) | [Federal Defendant] |
| *Defendant*. | ) | |

# ***NOTICE OF REMOVAL BY DEFENDANT EAST CENTRAL MISSOURI BEHAVIORAL HEALTH SERVICES, INC. D/B/A ARTHUR CENTER COMMUNITY HEALTH***

COMES NOW Defendant East Central Missouri Behavioral Health Services, Inc. d/b/a Arthur Center Community Health ("ACCH"), by and through its undersigned attorneys, pursuant to 42 U.S.C. §§ 233 and 1442, and hereby files its Notice of Removal to the United States District Court for the Eastern District of Missouri, Northern Division, and for the grounds of its Notice of Removal, states as follows:

## INTRODUCTION

1. Defendant ACCH is a nonprofit corporation and community "health center" recipient of federal grant funds under Section 330 of the Public Health Service Act (codified at 42 U.S.C. § 254b *et seq*.).

2. For all relevant periods, Defendant ACCH applied for and received federal status as a "deemed" United States Public Health Service ("PHS") employee for purposes of the protection afforded by 42 U.S.C. § 233(a).

3. On December 11, 2024, an action styled *Mildred Moser, individually and on behalf of all others similarly situated, v. Defendant East Central Behavioral Health Services, Inc. d/b/a/ Arthur Center Community Health* was filed in the Circuit Court of Audrain County, Missouri ("State Action"). (See attached Exhibit A, State Action Docket Sheet and Filings, p. 2–37.)

4. Plaintiff Moser asserts claims for Negligence and Negligence Per Se (Count I), Breach of Implied Contract (Count II), Unjust Enrichment (Count III), Breach of Bailment (Count IV), and Invasion of Privacy (Count V) against Defendant AACH based on an alleged data breach of protected health information ("PHI") and/or personally identifiable information ("PII"). (See Exhibit A, Plaintiff's Petition, p. 2–37.)

5. Plaintiff Moser asserts her claims against Defendant AACH in her individual capacity and on behalf of a proposed class defined as "All Missouri residents whose Private Information was compromised in the Data Breach." (See Exhibit A, p. 20, ¶ 89.)

6. The State Action is removable to this Court pursuant to 42 U.S.C. § 233(*l*)(2) based on Defendant AACH's federal status as a "deemed" United States Public Health Services ("PHS") employee for purposes of protection afforded by 42 U.S.C. § 233(a).

7. The State Action is also removable to this Court pursuant to 42 U.S.C. § 1442(a)(1) based on Defendant AACH's status as a federal officer sued in its capacity as "an officer (or any

person under that officer) of the United States or any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1).

**PARTIES**

8. Defendant ACCH receives federal funding under Section 330 of the PHS Act (codified at 42 U.S.C. § 254b) to operate a community-based health center project that provides primary and related health care services to residents in and around Audrain, Callaway, and Montgomery counties in central Missouri, regardless of any individual's ability to pay for services. *See* 42 U.S.C. § 254b(a), (b), (j), (k).

9. Defendant ACCH serves specific geographic areas that the HHS Secretary has designated as "medically underserved." *Id.* at 254b(a)(1).

10. At all relevant times, Defendant ACCH was deemed by the HHS Secretary to be a PHS employee for purposes of PHS Act immunity, 42 U.S.C. § 233(a) and (g).

11. Defendant ACCH's continuous deemed status, since calendar year (CY) 2023, is reflected on a web-based platform maintained by HRSA—*i.e.*, https://data.hrsa.gov/tools/ftca-search-tool. The site lists each deemed entity by name, address, and "deeming period."

12. Defendant ACCH's deemed status is also reflected in an official Notice of Deeming Action—issued by the Secretary of the Department of Health and Human Services ("HHS")—for each calendar year. (See attached Exhibit B, HHS Notices for CY 2023–2025.)

13. The protection deemed status affords to Defendant ACCH—and its officers, employees, governing board members, and certain contractors—is an absolute immunity from *any* civil action or proceeding resulting from their performance of (or alleged failure to perform)

"medical . . . or related functions" within the scope of their deemed federal employment. 42 U.S.C. § 233(a), (g), and (h).

14. This action arises out of Defendant ACCH's performance of mandatory functions that are essential—much less "related"—to its medical functions, and thus falls squarely within 42 U.S.C. § 233(a)'s statutory protection. *See, e.g., Krandle v. Refuah Health Ctr., Inc.*, No. 22-cv-4977, 2024 WL 1075359, at *9–10 (S.D.N.Y. Mar. 12, 2024) (holding deemed defendant's alleged duty to safeguard patient data is a "'medical . . . or related function'" within the meaning of 42 U.S.C. § 233(a)) (citing *Doe v. Neighborhood Healthcare*, No. 21-cv-1587, 2022 WL 17663520 at *6–8 (S.D. Cal. Sept. 8, 2022) (same)). *But see Ford v. Sandhills*, 97 F.4th 252, 260 (4th Cir. 2024) (concluding that maintaining confidentiality of patient information is not a medical or "related" function on the (mistaken) premise that § 233(a) immunity applies only to tortious conduct occurring "in the course of rendering medical treatment to a patient"), *pet. for cert. filed*, No. 24-483 (Oct. 25, 2024), and *Hale v. ARcare, Inc.*, 2024 WL 1016361 (E.D. Ark. Mar. 8, 2024) (denying ARCare's claimed § 233(a) immunity from putative class action arising out of data-breach incident), *appeal filed*, No. 24-1726 (8th Cir. Apr. 8, 2024).

15. In particular, this civil action arises out of a data breach of Defendant ACCH's electronic health record system which stored certain PII and/or PHI of "tens of thousands of individuals" who were required to provide private information to "Defendant [AACH] as a condition of receiving medical and healthcare service from [AACH]." (See Exhibit A, Plaintiff's Petition, p. 18–19, ¶¶ 79–80.)

16. The Petition alleges, in essence, that: (1) Defendant ACCH owes various duties to Plaintiff and the putative class members—arising out of their patient-provider relationship—to protect and safeguard their personal information from unauthorized disclosure or access; (2) Defendant ACCH breached those duties by failing to implement and maintain reasonable security procedures and practices to protect Plaintiff and the putative class members' PII/PHI from unauthorized access and disclosure; and as a result (3) Defendant ACCH caused various harms to Plaintiff and the putative class members. (See Exhibit A, Plaintiff's Petition, p. 21, 25–28, ¶¶ 94, 103–22.)

17. According to the Petition filed in the State Action, Plaintiff is a "patient" of Defendant ACCH who has received health care and medical services from Defendant ACCH "for more than nine years." (See Exhibit A, Plaintiff's Petition, p. 3, 19–20, ¶¶ 6, 80, 82, 87.)

18. The Petition defines the proposed putative class as "All Missouri residents whose Private Information was compromised in the Date Breach." (See Exhibit A, Plaintiff's Petition, p. 20, ¶ 89.)

**JURISDICTIONAL AND VENUE STATEMENT**

19. In the State Action, Defendant ACCH's was served with Plaintiff's Petition on January 16, 2025.

20. Pursuant to 28 U.S.C. § 1446(b), Defendant ACCH has until February 18, 2025 to timely file a Notice of Removal and therefore this Notice of Removal is timely filed.

21. Venue before this Court is proper because this Notice of Removal is filed in the federal district court that embraces the place where the local state court matter is pending. *See* 28 U.S.C. §§ 1441(a), 105(a)(2).

**BASIS FOR REMOVAL**

**Deemed Federal Employee Removal—42 U.S.C. § 233(*l*)(2)**

22. Plaintiff asserts common law claims of negligence, negligence per se, breach of implied contract, unjust enrichment, breach of bailment, invasion of privacy. (See Exhibit A, Plaintiff's Petition, p. 25–32, ¶¶ 103–53.)

23. The Petition alleges that the invasion of privacy—for which Plaintiff and the putative class members seek relief—represents a "harm long recognized in American courts." (See Exhibit A, Plaintiff's Petition, p. 20, ¶ 88.)

24. Section 233(a)'s immunity—which is premised on the defendant's *conduct*, not the plaintiff's theory of liability or cause of action—is easily broad enough to cover these claims. *Hui v. Castaneda*, 559 U.S. 799, 806 (2010) (recognizing plain text of § 233(a) is broad enough to "easily accommodate both known and unknown causes of action").

25. The Court has jurisdiction under 42 U.S.C. § 233(*l*)(2), a federal officer removal statute enacted specifically for the benefit of deemed PHS employees (such as Defendant ACCH).

26. Section 233(*l*)(2) provides a deemed individual or entity the right to a federal forum for a judicial determination as to the availability of a federal immunity defense.

27. The Attorney General is obligated to remove an action to federal court where (as here) the HHS Secretary deemed the health center defendant to be a PHS employee for the period

in which the events giving rise to the action occurred, regardless of the Attorney General's "litigation-specific" coverage decision. *Blumberger v. Tilley*, 115 F.4th 1113, 1117 (9th Cir. 2024), *pet. for reh'g* en banc *denied*, No. 22-56032, Dkt. 83 (9th Cir. Dec. 19, 2024); *see id.* at 1129 ("§ 233(*l*)(1) obligates the Attorney General to report on the Secretary's deeming decision, not to report the Attorney General's ultimate coverage decision.").

28. Nothing prevents the Attorney General from making and reporting its own case-specific coverage decision along with the Secretary's deeming determination. "But it is an employee's *deemed* status, not *covered* status, that triggers the removal provisions of § 233(*l*)(1). Any advice the Attorney General may give to the state court about its ultimate coverage decision has *no legal consequence*—one way or another—under § 233(l)(1)." *Id.* at 1134 (emphasis added); *accord Celestine v. Mount Vernon Neighborhood Health Ctr*., 403 F.3d 76, 82 (2d Cir. 2005) ("§ 233(*l*)(1) itself says that compliance with its terms also serves to 'satisfy the provisions of subsection (c).'").

29. Where, as here, the Attorney General "fails" to remove under § 233(*l*)(1), the deemed defendant has the right to remove the action under its statutory sibling, § 233(*l*)(2). The PHS Act imposes no time limit on § 233(*l*)(2) removals. *Est. of Booker v. Greater Philadelphia Health Action*, 10 F.Supp.3d 656, 665–66 (E.D. Pa. 2014) ("The fact that § 233(*l*)(2) was added to a statutory scheme in which suits against health centers were removable at any time before trial provides a basis to infer that Congress intended the same time frame to govern removals by the health centers themselves"); *see also Campbell v. S. Jersey Med. Ctr.*, 732 F. App'x 113 (3d Cir. 2018) (recognizing 42 U.S.C. § 233(*l*)(2) removal is permissible up to but not after entry of

judgment as that is no longer "before trial" within the meaning of § 233(c)); 42 U.S.C. § 233(c) (permits Attorney General to remove state actions on behalf of actual and deemed PHS employees "any time before trial").

30. Given the commanding language and unmistakable thrust of § 233(*l*), this provision should be broadly construed to facilitate the removal, hearing, and judicial determination expressly mandated therein. 42 U.S.C. 233(*l*)(2) ("If the Attorney General *fails*" to appear for § 233(*l*)(1)'s singular purpose—*i.e.*, to effectuate removal on behalf of deemed defendants—the action, upon "petition of *any*" deemed defendant, "shall be removed … [and] stayed" pending a "hearing" and a threshold immunity "determination"); *Celestine*, 403 F.3d at 82 (recognizing that compliance with § 233(*l*)(1) satisfies by operation of law § 233(c) for purposes of removal); *Cf. Willingham v. Morgan*, 395 U.S. 402, 406–07 (1969) (construing the federal officer removal statute, 42 U.S.C. § 1442 broadly in favor of a federal forum to ascertain the availability of a federal defense arising out of official conduct). That § 233(*l*)(2) requires a presumption in favor of a federal forum is supported by the fact that it—like the general officer removal statute (28 U.S.C. § 1442)—operates as an exception to the well-pleaded complaint rule, which otherwise requires a federal question to appear on the face of the complaint. *Campbell*, 732 Fed. App'x at 117 ("For section 233(*l*)(2) to have any effect, a district court must at least have jurisdiction to substitute the United States when it is appropriate to do so.").

**Federal Officer Removal—28 U.S.C. § 1442**

31. The Court also has jurisdiction under 28 U.S.C. § 1442(a)(1), the general officer removal statute. *See Agyin v. Razmzan*, 986 F.3d 168, 177 (2d Cir. 2021) (holding that (a)

individual deemed PHS employee's removal under 42 U.S.C. § 1442 was proper because, as an employee of a deemed health center entity, he was acting under a federal officer with respect to medical and related functions performed on behalf of the health center entity, and (b) deemed PHS employee enjoyed "the same legal immunity that is extended to employees of the Public Health Service")); *accord Blumberger*, 115 F.4th at 1123 (concluding that "HHS's [deeming] notice"— such as the ones attached hereto as Exhibit C— "provides *unequivocally clear and certain support* for [the deemed physician]'s contention that he was acting 'pursuant to a federal officer's directions' when treating [the plaintiff] and that there is a 'colorable federal defense' pertaining to the medical malpractice claims." *Id.* (emphasis added).

32. Section 1442(a)(1) affords a right of removal to "any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office." 28 U.S.C. § 1442(a)(1).

33. The statute permits removal even when the underlying federal question arises only as a defense to a state-law claim. *See Jefferson County v. Acker*, 527 U.S. 423, 431 (1999); *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 644 n.12 (2006) (noting federal officer removal statute operates as an exception to the "well-pleaded complaint" rule). The general officer removal statute protects important federal interests and must be broadly construed in favor of a federal forum. *See Colorado v. Symes*, 286 U.S. 510, 517 (1932) ("It scarcely need be said that such measures [allowing for federal officer removal] are to be liberally construed to give full effect to the purposes for which they were enacted."); *Willingham*, 395 U.S. at 406–07.

34. When broadly construed, as required, the phrase "any officer" in § 1442 can be read to include Defendant ACCH as it is "deemed to be an employee of the Public Health Service" under a federal statute that not only affords Defendant ACCH a federal immunity defense but affords an additional removal right as well.

35. At a minimum, however, even if Defendant ACCH did not qualify as a federal officer under 28 U.S.C. § 1442, it qualifies as a person *acting under* a federal officer. *Agyin*, 986 F.3d at 177; *see also* H.R. Rep. 104-398, reprinted in 1995 U.S.C.C.A.N. 767, 774 (indicating congressional intent that deemed PHS employees be "covered for malpractice claims under the [FTCA] in the same manner as are employees of the Public Health Service"); *see also Friedenberg v. Lane County*, 68 F.4th 1113 (9th Cir. 2023) (citing H.R. Rep. No. 104-398, at 4, for the point that "Congress intended for deemed PHS employees to receive protection 'in the same manner' as traditional PHS employees during the coverage period") (reversing district court's denial of substitution in a state court action that deemed PHS employees removed to federal court pursuant to 28 U.S.C. § 1442 and 42 U.S.C. § 233); *Krandle v. Refuah Health Ctr., Inc.*, No. 22-4907, 2023 WL 2662811, *11 (S.D.N.Y. March 28, 2023) (finding—in a putative data-breach class action—that deemed health center, "in order to 'carry out the duties of the federal government to provide medical care to the indigent,' [defendant health center] must keep patient records safe as required by federal statute, arguably qualifying [deemed health center's] actions as 'acting under' color of federal regulations" for purposes of 28 U.S.C. 1442(a)(1) (citing *Agyin*, 986 F.3d at 176)).

36. "T]he government itself has invoked § 1442 on behalf of deemed employees" such as Defendant ACCH numerous times. *Agyin*, 986 F.3d at 179, 184–85 (collecting cases and noting

that the government "did not err in doing so"). *See also Ivy by and through Ivy v. Berry*, E.D. Missouri, No. 20-cv-00045-SNLJ, 2020 WL 1873415 (E.D. Missouri April 15, 2020) (ordering United States substituted in place of deemed defendant after U.S. Attorney's removal from state court pursuant to § 1442(a)(1) and § 2679(d)(2)); *Fisher v. Darryl Zinck, M.D. and Family Health Centers*, No. 18-cv-01236-AGF (E.D. Mo. July 26, 2018), ECF 1 (Notice of Removal) (removing state action under § 1442(a)(1) and § 2679(d)(2) on behalf of deemed defendants by U.S. Attorney for the Eastern District of Missouri).

37. To invoke § 1442(a)(1)'s "acting under" provision, a defendant must demonstrate that (1) he or she or it is a "person" under the statute (2) who acted "under color of federal office" and (3) has a "colorable federal defense." 42 U.S.C. § 1442(a)(1).

38. As a nonprofit corporation, which operates a federal grant project on behalf of HHS, Defendant ACCH qualifies as a person within the meaning of § 1442. *E.g., Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 135 (2d Cir. 2008) (finding that the "term 'person' includes corporate persons"). ACCH "acted under" an office of HHS to "assist, or to help carry out, the duties or tasks of the federal superior." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 149 (2007); 42 U.S.C. § 254(*o*) (authorizing Secretary to delegate administration of Health Center grant program to central office of Health Resources and Services Administration).

39. In particular, Defendant ACCH is statutorily obligated to serve an area or population that the HHS Secretary designated as "medically underserved." 42 U.S.C. § 254b(a)(1).

40. Defendant ACCH is therefore supporting the mission of the actual PHS by performing functions that would otherwise fall within PHS responsibilities. *Agyin*, 986 F.3d at 176

n.3 (finding that deemed PHS defendant "performed a job that—in the absence of the Federally Supported Health Centers Assistance Act and its provision for deeming health centers and their staffs to be federal employees—the federal government would have had to perform itself: He assisted and helped to carry out the duties of the federal government to provide medical care to the indigent." (citing legislative history)).

41. The history of the FSHCAA illustrates the close relationship between health centers and their personnel and actual PHS employees.

42. When considering the FSHCAA legislation, Congress noted that, historically, more than one-half of health center staff were actual federal employees serving in the National Health Service Corps ("NHSC") program. H.R. Rep. 102-823(I), at 5 (1992). Thus, until 1983, a significant portion of a health center's personnel were actual federal PHS employees. *See id.* ("According to the National Association of Community Health Centers (NACHC), all NHSC assignees were members of the [PHS] until 1983, and thus were covered under the FTCA as Federal employees"); HRSA, NHSC, NHSC Timeline, https://nhsc.hrsa.gov/about-us/timeline (providing that, after 1983, "NHSC members are no longer federal employees."). Part of Congress's motivation for FSHCAA was to address increased costs incurred during the 9-year period when the majority of health center staff were not PHS employees. *See id.* (". . . the NHSC-assigned physicians lost their FTCA coverage, thus making malpractice costs a larger problem for the centers"). The FSHCAA effectively shifted the NHSC's PHS Act immunity to health center personnel, who perform functions the PHS otherwise performs. As Congress noted, "there is close

Federal supervision of the centers themselves in the form of clinical guidelines, funding and operational conditions, and quality assurance requirements." H.R. Rep. 102-823(I), at 5-6.

43. Defendant ACCH is subject to detailed federal requirements, oversight, and control. *See* H.R. Rep. No. 102-823 at 5 ("Federal requirements associated with the grants are administratively burdensome and address all areas of operation."); *accord Agyin*, 986 F.3d at 177 (concluding community health center was "subject to federal oversight and control" sufficient to render health center physician "acting under" a federal officer for 28 U.S.C. § 1442(a)(1)). Among these requirements is the obligation to "have an ongoing quality improvement systems that includes clinical services and management, and *that maintains the confidentiality of patient records*." 42 U.S.C. § 254b(k)(3)(C) (emphasis added) (prohibiting HHS's approval of a health center's grant application absent a determination of compliance with this requirement); *see also* 42 C.F.R. § 51c.110 ("*All information as to personal facts and circumstances obtained by the project staff about recipients of services shall be held confidential, and shall not be divulged without the individual's consent*. . . .") (emphasis added); 42 C.F.R. § 51c.303 ("A community health center supported under this subpart must . . . [i]mplement a system for maintaining the confidentiality of patient records in accordance with the requirements of § 51c.110 of subpart A.").

44. Defendant ACCH's deemed federal employee status (as to specified periods) is irrevocable and affords "the same" immunity that an actual PHS employee enjoys under 42 U.S.C. § 233(a). 42 U.S.C. § 233(g)(1)(A) (making remedy against United States "exclusive of any other civil action or proceeding *to the same extent* as the remedy against the United States is exclusive

pursuant to subsection (a)") (emphasis added), (F) (providing that deemed status is "final and binding" on the Secretary, the Attorney General, and all parties to litigation).

45. For purposes of § 1442, Defendant ACCH's federal defense is "colorable," to the say the least. *E.g.*, *Krandle*, 2024 WL 1075359, at *9–10 (enforcing deemed health center defendant's claimed immunity in remarkably data-breach class action, exercising § 1442 jurisdiction to do so); *Neighborhood Healthcare*, 2022 WL 17663520, at *6–8 (same).

**STATUTORY FRAMEWORK**

46. Under the Emergency Health Personnel Act of 1970, Pub. L. No. 91-623, § 4, 84 Stat. 1868, 1870-71 (1970), codified at 42 U.S.C. § 233, PHS personnel are absolutely immune from any civil action or proceeding arising out of their performance of medical, surgical, dental or related functions within the scope of their employment. 42 U.S.C. § 233(a).

47. Section 233(a) extends absolute immunity to PHS personnel by making the remedy for damages against the United States under the FTCA the *exclusive* remedy for such actions. *Id*.

48. To facilitate the legislative objective of ensuring medical services in underserved areas, 42 U.S.C. § 233(a) shields PHS personnel from personal liability arising out of their performance of medical, surgical, dental, and related functions. Without such protection, the legislative history indicates that the cost of professional liability insurance would greatly hinder or altogether preclude the performance of those duties. *See* § 2, 84 Stat. 1868; H.R. Rep. No. 1662, 91st Cong., 2d Sess. 1 (1970); 116 Cong. Rec. 42,543 (1970) (Rep. Staggers, the House of Representatives sponsor, stating that PHS physicians "cannot afford to take out the customary

liability insurance as most doctors do," "because of the low pay that so many of those who work in the [PHS] receive.").

49. The Federally Supported Health Centers Assistance Act of 1992 (and as amended in 1995) (the "FSHCAA"), codified at 42 U.S.C. § 233(g) *et seq.*, authorizes the HHS Secretary to extend to certain federally funded health centers and their officers, directors, and employees (and certain contractors) the same "absolute immunity" § 233(a) affords to actual PHS employees. *Hui*, 559 U.S. at 806; 42 U.S.C. § 233(g)(1)(B) (extending the same immunity to deemed PHS employees).

50. To qualify as a deemed entity for § 233(a) immunity, a health center grantee must submit an application with detailed information and supporting documentation sufficient for the HHS Secretary to verify that the coverage should apply to all services provided by the health center to patients and in certain circumstances non-patients of the center. The applicant is also required to demonstrate that the health center meets four requirements listed in § 233(h), including a requirement to "implement[] appropriate policies and procedures to reduce the risk of malpractice *and the risk of* lawsuits *arising out of any health or health-related functions performed by the entity*." 42 U.S.C. § 233(g)(1)(D) and (h) (emphasis added). The HHS Secretary must design an "application . . . to verify" that the health center applicant has done so. *Id*. at § 233(g)(1)(D); *Blumberger*, 115 F.4th at 1128 (recognizing the Secretary as the department head who has "expertise in administering healthcare policies and services").

51. In that HHS-prescribed deeming application, which sets conditions for deemed status, the Secretary expressly ties confidentiality to the provision of health care: identifying

compliance with "(HIPAA) and other applicable medical record confidentiality requirements" as one of the "areas/activities of highest *clinical* risk for the health center." HHS, Health Resources and Services Administration, Calendar Year 2026 Requirements for [FTCA] Coverage for Health Centers and Their Covered Individuals ("Deeming Application" at 12–14, https://bphc.hrsa.gov/sites/default/files/bphc/data-reporting/pal-2025-01.pdf (emphasis added).[1]

52. The relationship between a deemed health center's clinical and confidentiality functions is likewise evident in HHS's requirement that health center applicants verify, under penalty of perjury, that they have "annual risk management training plans for all staff . . . based on identified areas/activities of highest clinical risk." *Id.* at 15. The required staff-wide training to mitigate "clinical risk" explicitly includes "training in [HIPAA] and other applicable medical record confidentiality requirements." *Id.* at 12 (requiring health centers provide HHS a copy of their training plans).

53. Finally, HHS views health centers' implementation and maintenance of "systems and procedures for protecting the confidentiality of patient information" as so critical to its decision whether to extend deemed PHS employee status, that a failure to do so, and to "safeguard this information against loss, destruction, or unauthorized use" is grounds for denying a health center "deemed" PHS employee status, and thus the absolute immunity protection of § 233(a). *Id.* at 21.

---

[1] The Secretary issues a new deeming application each calendar year. The available CY 2026 iteration—which postdates the events at issue—illustrates HHS's increasing emphasis on safeguarding patient information.

54. The Secretary is statutorily required to make a deeming determination for health centers and their personnel within 30 days of receipt of such an application. 42 U.S.C. § 233(g)(1)(E). The application seeks deemed federal status in advance of and for a specific prospective period (*i.e.*, calendar year). A favorable deeming determination by the Secretary is "final and binding" (42 U.S.C. § 233(g)(1)(D)-(F)) on HHS, the Attorney General, and "other parties to *any* civil action or proceeding," 42 U.S.C. § 233(g)(1)(F) (emphasis added), with respect to the designated period.

55. By requiring a prompt and advance deeming determination, and conferring absolute immunity from any action or proceeding resulting from covered conduct (*i.e.*, the deemed federal employee's performance of "medical, surgical, dental, or related functions") in that period, the FSHCAA is designed to eliminate a federally-funded health center's need to purchase private liability insurance and allow centers to devote their federal grant funds to patient services (rather than insurance premiums). *See* H.R. Rep. 102-823, pt. 1, at 3 (1992). "While Congress's concerns regarding malpractice insurance premiums were the driving force behind the legislation, Congress did not limit § 233 immunity to 'only' malpractice claims when it could have." *Friedenberg*, 68 F.4th at 1128; *see id*. at 1127 n.7 (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 108 (2d Cir. 2000)).

56. When a civil action or proceeding is brought against a deemed PHS employee, the entity or individual has a duty to deliver the pleadings to the grantor agency's designated representative, which is HHS's Office of General Counsel (OGC). HHS OGC is in turn required to "promptly" provide copies of the pleadings to the Attorney General and appropriate local U.S. Attorney. 42 U.S.C. § 233(b); *see also McLaurin v. United States*, 392 F.3d 774, 779 (5th Cir.

2004) (recognizing that it is the designated federal agency or "supervisor, not the employee, who must 'promptly' deliver the suit papers to the government").

57. Upon notification of a state court action against a deemed individual or entity, the Attorney General has a mandatory (non-discretionary) duty to appear in that court within 15 days of notice of the lawsuit to report whether the "Secretary has determined under subsections (g) and (h) of [Section 233], that such entity, officer, governing board member, employee, or contractor of the entity is deemed to be an employee of the Public Health Service for purposes of this section with respect to the actions or omissions that are the subject of such civil action or proceeding." *Id.* at § 233(*l*)(1). For purposes of § 233(*l*)(1)'s removal provision, the Attorney General's report to the state or local court of the Secretary's deeming determination is "deemed to satisfy the provisions of [42 U.S.C. § 233(c)] that the Attorney General certify that an entity, officer, governing board member, employee, or contractor of the entity was acting within the scope of their employment or responsibility." *Id.* § 233(*l*)(1); *cf.* 28 U.S.C. § 2679(d)(3). Section 233(*l*)(1) constructively satisfies § 233(c) to trigger removal but does not restrict or alter the Attorney General's discretion under § 233(c) to make, decline to make, or withdraw a scope of employment certification. *Blumberger*, 115 F.4th at 1135, 1140 (noting Attorney General "is free to contest" a deemed defendant's claimed immunity at a "hearing" in federal court) (citing § 233(c))

58. If, despite the mandatory duty under § 233(*l*)(1), the Attorney General (or an authorized representative) "fails" to effectuate removal within 15 days of notice of the state action, the deemed entity or individual has an absolute right to remove the matter to the appropriate federal district court, without any time limit for doing so. *Id.* § 233(*l*)(2). Section 233(*l*)(2) is—in

substance and effect—an officer removal statute, similar to the general officer removal statute at 28 U.S.C. § 1442(a)(1). *Agyin*, 986 F.3d at 179-80 (discussing differences between deemed PHS defendant's separate and alternative removal rights under § 233(*l*)(2) and § 1442); *Campbell*, 732 Fed. Appx. at 16 (recognizing § 233(*l*)(2) overrides the well-pleaded complaint rule's presumption against removability, which (apart from diversity) bars removal unless a federal question appears on the face of the complaint, otherwise "a defendant's ability to avail himself of a federal forum would be partly dependent on how the plaintiff pled the action, rather than the substance of the plaintiff's claims").

59. Upon removal, the state court proceeding is stayed until the federal district court conducts a "hearing" to determine the proper forum or procedure and issues an order consistent with its determination. 42 U.S.C. § 233(*l*)(2); *Blumberger*, 115 F.4th at 119 ("If the case has been removed by an employee without action by the Attorney General, the state court is deprived of jurisdiction, and the case is stayed until the federal court 'conducts a hearing, and makes a determination, as to the appropriate forum or procedure for the assertion of the claim.'").

60. The hearing in federal district court following § 233(*l*) removal allows any party to challenge the federal government's failure or refusal to certify that the deemed defendant was performing medical or related functions within the scope of its (his or her) employment as a deemed PHS employee with respect to claims against it (him or her) and substitute the United States as the only proper defendant in its (his or her) place. *Blumberger*, 115 F.4th at 127. Where, as here, the claim is covered by the deemed defendant's § 233(a) immunity, § 233(*l*)(2) ensures that the United States is substituted as the only proper defendant its place. *Id.* at 1135, 1140; *Agyin*,

986 F.3d at 184; *Friedenberg*, 68 F.4th at 1131; *El Rio Santa Cruz Neighborhood Health Ctr. v. U.S. Dep't of Health and Human Servs*., 396 F.3d 1265, 1272 (D.C. Cir. 2005); *see also Booker*, 10 F.Supp.3d at 656; *Campbell*, 2020 WL 1466332, *1 (recognizing removal jurisdiction to substitute United States in place of deemed defendant to effectuate § 233(a) immunity).

**FACTUAL AND PROCEDURAL BACKGROUND PERTINENT TO THE GROUNDS FOR REMOVAL**

61. Defendant ACCH submitted deeming applications for itself and its personnel with respect to all times relevant to this action. The HHS Secretary, under 42 U.S.C. § 233(g) and (h), approved the applications and deemed Defendant ACCH and its personnel for purposes of the protections afforded under § 233(a) *et seq*. *See* https://data.hrsa.gov/tools/ftca-search-tool; *see also, e.g.*, Ex. C (Notice of Deeming Action for Calendar Years 2023-2025).

62. At its core, Plaintiff's Petition alleges that Defendant ACCH failed in its duty to implement adequate and reasonable measures for protecting the confidentiality of patient information and safeguarding it against unauthorized disclosures, consistent with its legal duties to do so, and, as a result, their information was "wrongfully lost and disclosed to unauthorized third persons." (See Exhibit A, Plaintiff's Petition, p. 27, ¶ 115.)

63. Defendant ACCH delivered the summons and complaint to the HHS Secretary's designated point of contact (*i.e.*, the HHS Office of General Counsel) via the agency's designated email address ("hhs-ftca-claims@hhs.gov") on or about February 10, 2025.

64. To date, the Attorney General has not appeared in or otherwise advised the state that the Secretary granted Defendant ACCH's deeming applications (under § 233(g) and (h)) for the period in which the events giving rise to this action occurred. (See Exhibit B.)

65. If the Attorney General were to give that advice, as required, that would automatically satisfy 42 U.S.C. § 233(c) for purposes of removal. 42 U.S.C. § 233(*l*)(1); *Blumberger*, 115 F.4th at 1134; *accord Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d at 82 (recognizing "compliance" with "§ 233(*l*)(1) . . . serves to 'satisfy the provisions of subsection (c)'").

66. If anything, then, Defendant ACCH—by removing the action under § 233(*l*)(2)—merely did here what the Attorney General is obligated to do. Section 233(*l*)(2) "contemplates," and provides a failsafe for situations where the Attorney General does not remove actions against deemed defendants. *Blumberger*, 115 F.4th at 1119 (recognizing that when Attorney General "fails" to comply with its removal obligation under § 233(*l*)(1), any deemed defendant has a removal right without time limit under § 233(*l*)(2)).

67. Section 233(*l*)(2) effectively codifies longstanding immunity jurisprudence, recognizing that immunity determinations ought to be made at the earliest stages of litigation because immunity is not only a defense against liability but a right to be free from the burdens of litigation altogether. *Saucier v. Katz*, 533 U.S. 194, 200–01 (2001) ("an immunity from suit rather than a mere defense to liability . . . like an absolute immunity . . . is effectively lost if a case is erroneously permitted to go to trial" (citing *Mitchell v. Forsyth*, 472 U. S. 511, 526 (1985))), *Mitchell*, 472 U.S. at 525 ("the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action"). *Cf.* 42 U.S.C. § 233(*l*) (effectuating prompt removal and a stay pending a threshold immunity determination).

**DEFENDANT ACCH'S ABSOLUTE IMMUNITY COVERS THIS ACTION**

68. As previously stated, § 233(a) provides absolute immunity to deemed PHS employees "for damage for personal injury, including death, *resulting from the performance of medical*, surgical, dental, *or related functions*" while acting within the scope of its official employment. 42 U.S.C. § 233(a), (g) (emphasis added).

69. The immunity provided under § 233(a) is not limited to medical malpractice but encompasses any action or proceeding arising out of "*related functions"—i.e.*, functions that are related to the performance of medical, surgical, or dental functions. 42 U.S.C. § 233(a); *Friedenberg*, 68 F.4th at 1127–28 ("The statutory text of § 233(a) clearly shows that immunity is not tied to whether the tort transpired in caring for the patient . . . . Congress did not limit § 233 immunity to 'only' malpractice claims when it could have.") (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 108 (2d Cir. 2000)); *see also* Hui, 559 U.S. at 806 (resolving circuit split in favor of *Cuoco*).

70. Plaintiff's claims against Defendant ACCH resulted from its "performance of medical . . . or related functions" within the scope of its deemed federal employment. 42 U.S.C. §§ 233(a), 254(b).

71. On its face, the Petition alleges that Defendant ACCH, with respect to Plaintiff and its other similarly situated patients, breached its duty to maintain and secure the confidentiality of their respective PII/PHI and, as a result, caused harms to them. *See, e.g.*, Ex. A., Compl. ¶¶ 94, 103-22. (See Exhibit A, Plaintiff's Petition, p. 21–22, 24–28, ¶¶ 94, 103–22.)

72. Maintaining the confidentiality of a patient's personal and confidential information is a function that is related to—and inseparable from—the medical functions of a deemed health center.

73. Plaintiff's claims arise out of "health or health-related functions," 42 U.S.C. § 233(h)(1), that are: quintessential to Defendant ACCH's health center project, statutorily mandated, and a condition of its deemed PHS status—*i.e.*, "to implement and maintain systems and procedures for protecting the confidentiality of patient information and safeguarding this information against . . . unauthorized use, consistent with federal and state requirements." *See, e.g.*, Deeming Application, at 21; 42 U.S.C. §§ 233(h)(1), § 254b(k)(3)(C) (authorizing legislation, which makes a health center (such as Defendant ACCH) eligible for deemed status in the first place, requires center to have, among other things, "an ongoing quality improvement system that includes clinical services and management, and that maintains the confidentiality of patient records"); 42 C.F.R. § 51c.110, 51c.303.

74. Plaintiff's Petition alleges that Defendant ACCH failed to adequately perform these very functions. (See Exhibit A, Plaintiff's Petition, p. 2, ¶ 1) ("Plaintiff brings this class action against Defendant for its failure to properly secure and safeguard the protected health information ("PHI") and personally identifiable information ("PII") . . . of Plaintiff and other similarly situated patients of Defendant …").

75. In other words, the Petition itself acknowledges, if not hinges on, the inextricable connection between the mandated medical and related functions of a federally funded health center

and the duty to maintain the confidentiality of patient information. (See Exhibit A, Plaintiff's Petition, p. 2, 17, 21–22, 25–28, ¶¶ 1, 79, 94, 103–22.)

76. Several courts have correctly recognized claims concerning a deemed PHS defendant's alleged failure to safeguard confidential patient information as arising out of a "medical … or related function" within the meaning of 42 U.S.C. § 233(a). *Krandle*, 2024 WL 1075359, at *9–10, *Neighborhood Healthcare*, 2022 WL 17663520, at *6–8; *Kezer v. Penobscot Cmty. Health Ctr.*, No. 1:15-cv-00225-JAW, 2019 BL 141566, at *8 (D. Me. Mar. 21, 2019).

77. Thus, Plaintiff's exclusive remedy with respect to the alleged acts or omissions of Defendant ACCH is a claim against the United States under the FTCA. *See* 42 U.S.C. § 233(a).

**REMOVAL PROCEDURES**

78. A copy of this Notice of Removal is being filed with the local state court where this action was filed. 28 U.S.C. § 1446(d).

79. Pursuant to 42 U.S.C. § 233(*l*)(2), all proceedings in this case are automatically stayed pending the Court's hearing and threshold immunity determination. 42 U.S.C. § 233(*l*)(2) (upon removal, "[t]he civil action . . . *shall be stayed* in ["the appropriate United States district court"] until such court conducts a hearing, and makes a determination, as to the appropriate forum or procedure for the assertion of the claim for damages described in subsection (a) and issues an order consistent with such determination") (emphasis added).

## CONCLUSION

For the foregoing reasons, the Court should, after conducting a hearing pursuant to 42 U.S.C. § 233(*l*)(2), substitute the United States as the only proper defendant in place of East Central Behavioral Health Services in the above-captioned action.

Dated: February 17, 2025

Respectfully submitted,

GAUSNELL, O'KEEFE & THOMAS, LLC

/s/ *James D. Ribaudo*

James D. Ribaudo #67232MO
1717 Park Avenue
St. Louis, Missouri 63104
Tel: 314.257.9807
Fax: 314.257.9801
jribaudo@gotlawstl.com

FELDESMAN LEIFER LLP

/s/ *Matthew S. Freedus*

Matthew S. Freedus* DC Bar No. 475887
1129 20th Street, N.W., 4th Floor
Washington, DC 20036
Tel: 202.466.8960
mfreedus@feldesman.com

**Pro hac application will be filed promptly*

*Counsel for East Central Behavioral Health Services, Inc. d/b/a/ Arthur Center Community Health*