**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**(NORTHERN DIVISION)**

| | | |
|---|---|---|
| MILDRED MOSER, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>EAST CENTRAL MISSOURI BEHAVIORAL HEALTH SERVICES, INC. D/B/A ARTHUR CENTER COMMUNITY HEALTH,<br><br>*Defendant*. | ) | Case No. 2:25-CV-00020-SRW |

**<u>RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND</u>**

## INTRODUCTION

Defendant East Central Missouri Behavioral Health Services, Inc. d/b/a Arthur Center Community Health ("ACCH") properly removed this case pursuant to both 42 U.S.C. § 233(*l*)(2) and 28 U.S.C. § 1442(a)(1). Those provisions afford deemed Public Health Service ("PHS") employees, like ACCH, a federal forum to adjudicate claims to federal immunity under 42 U.S.C. § 233(a). Indeed, the Attorney General was required, but failed, to remove this case to federal court for that very determination. *See Blumberger v. Tilley*, 115 F.4th 1113, 1134 (9th Cir. 2024), *petition for cert. filed* Apr. 9, 2025 (U.S. No. 24-1072). In accordance with 42 U.S.C. § 233(b), ACCH provided a copy of the complaint and summons to the United States Department of Health and Human Services (HHS)—the only entity § 233 requires ACCH to notify—on February 10, 2025. *See* 42 U.S.C. § 233(b); Notice of Removal ¶ 63, ECF No. 1. The Attorney General denies having a mandatory obligation to remove actions under 42 U.S.C. § 233(*l*)(1) based on the defendant's deemed status. Instead, the Attorney General's (mistaken) position is that its ultimate

*coverage* decision determines whether an action is removable under § 233(*l*)(1). The Attorney General's state court appearance confirms as much.

This Court has ample jurisdiction—under separate and distinct officer removal statutes—to hold a hearing and adjudicate ACCH's claimed immunity. *Blumberger*, 115 F.4th at 1139–40.

## FACTUAL AND LEGAL BACKGROUND

### A. ACCH's Deemed Federal Employment and Immunity

Pursuant to the Emergency Health Personnel Act, Pub. L. No. 91-623, 84 Stat. 1868 (1970), codified at 42 U.S.C. § 233(a) *et seq.*, PHS personnel are absolutely immune from any civil action or proceeding arising out of their performance of medical, surgical, dental, or related functions undertaken within the scope of their employment. 42 U.S.C. § 233(a). The statute provides immunity by making the "remedy against the United States" under the Federal Tort Claims Act ("FTCA") "*exclusive of any other civil action or proceeding* . . . ." *Id.* (emphasis added). The Federally Supported Health Centers Assistance Act of 1992 ("FSHCAA"), as amended in 1995 and codified at 42 U.S.C. § 233(g) *et seq.*, authorizes the HHS Secretary to extend that "same" immunity to certain "federally-supported" health centers and their officers, directors, employees, and certain contractors. 42 U.S.C. § 233(g)(1)(A).

To be deemed a PHS employee, a health center applicant must apply in the "form" and "manner as the Secretary shall prescribe." 42 U.S.C. § 233(g)(1)(D). In its application, the health center must demonstrate it meets four requirements listed in § 233(h). On receipt of the application, HHS must promptly decide whether to confer deemed federal status. *Id.* § 233(g)(1)(E). A favorable deeming determination confers "final and binding" federal status on the health center and its personnel for the following calendar year. 42 U.S.C. § 233(g)(1)(D), (F) (deeming is "final and binding" on HHS, the Attorney General, and "other parties to any civil action or proceeding").

When a civil action is brought against a deemed PHS employee, the deemed employee must deliver the pleadings to HHS's Office of General Counsel ("HHS OGC"). 42 U.S.C. § 233(b); HHS, Health Res. and Servs. Admin. ("HRSA"), Federal Tort Claims Act: Health Center Policy Manual at 25, https://bphc.hrsa.gov/sites/default/files/bphc/ftca/pdf/ftcahcpolicymanualpdf.pdf. In turn, HHS OGC (not the deemed defendant) is required to "promptly" deliver copies of the pleadings to the Attorney General and appropriate local U.S. Attorney. 42 U.S.C. § 233(b).

Section 233(*l*)(2) is, in substance and effect, an officer removal statute, which—like 28 U.S.C. § 1442(a)—supplies federal removal jurisdiction. *See Agyin v. Razmzan*, 986 F.3d 168, 178 (2d Cir. 2021). On notification of a state court action against any health center grantee, the Attorney General must appear in that court within fifteen days of notice of the lawsuit to report whether the "Secretary has determined under subsections (g) and (h) of [Section 233], that such [defendant] is deemed to be an employee of the [PHS] for purposes of this section with respect to the actions or omissions that are the subject of such civil action or proceeding." 42 U.S.C. § 233(*l*)(1); *Blumberger*, 115 F.4th at 1126–27 ("subsection (*l*)(1) requires the Attorney General to provide positive advice to the state court when the employee was deemed for the time period at issue and the lawsuit arises out of a class or category of medical conduct for which the employee was deemed"). The Attorney General's appearance and report to the state court of the Secretary's ex-ante deeming determination satisfies, as a matter of law, "the provisions of [42 U.S.C. § 233(c)] that the Attorney General certify that an entity was acting within the scope of their employment or responsibility." 42 U.S.C. § 233(*l*)(1); *Blumberger*, 115 F.4th at 1127; *see id.* at 1134 (if Attorney General reports that a defendant is deemed to be a PHS employee but "was not acting within the scope of his employment, *removal is necessary*" (emphasis added)).

Removal under § 233(*l*)(2) automatically stays all proceedings until the district court conducts a hearing to "to decide whether to remand the case or to substitute the United States as a party and deem the action as one brought under the FTCA." *Campbell v. S. Jersey Med. Ctr.*, 732 F. Appx. 113, 116–17 (3d Cir. 2018); *see* 42 U.S.C. § 233(*l*)(2).

**B. Factual and Procedural Background**

On December 11, 2024, Plaintiff filed the instant action in Missouri state court. Notice of Removal ¶ 3, ECF No. 1. The complaint alleges ACCH breached duties to Plaintiff and the putative class members, arising from their patient-provider relationships, to protect their confidential information—collected in the course, and as a condition, of providing care—against loss/unauthorized use and, as a result, a third party gained unauthorized access to that information from ACCH's electronic health record system in or around 2024. *See id.*, Ex. A at 2–37 (Compl.) ¶¶ 1–4, 8–13, 20–33. At all times relevant to this action, HHS deemed ACCH to be a PHS employee for purposes of § 233(a) immunity. Notice of Deeming Action, ECF No. 1-2.

In accordance with 42 U.S.C. § 233(b), ACCH delivered the complaint to the HHS Secretary's designated point of contact (*i.e.*, the HHS Office of General Counsel, at "hhs-ftca-claims@hhs.gov") on February 10, 2025. Notice of Removal ¶ 63; Mem. in Supp. of Pl.'s Mot. to Remand ("Pl.'s Mot.") at 9, ECF No. 9. On February 17, 2025, ACCH removed the case to this Court pursuant to 42 U.S.C. § 233(*l*)(2) and 28 U.S.C. § 1442(a)(1). *See generally* Notice of Removal.

On March 7, 2025, the Attorney General (through a local designee) filed a notice in state court asserting that although "HHS had 'deemed' [ACCH] to be an 'employee of the Public Health Service' for the relevant time period," it would not remove the action to federal court because, in the Attorney General's estimation, "Plaintiff's Complaint does not arise out of any conduct . . . for

which § 233(a) makes the remedy against the United States exclusive." ECF No. 8-1 (Notice of the United States Under 42 U.S.C. § 233(*l*)(2)).[1]

## LEGAL STANDARD

There is a strong presumption in favor of removal jurisdiction when a party removes a case to federal court pursuant to a federal officer removal statute. *See Buljic v. Tyson Foods, Inc.*, 22 F.4th 730, 738 (8th Cir. 2021) ("The federal officer removal statute is to be 'liberally construed,' and thus the typical presumption against removal does not apply.") (citations omitted). There is also a strong presumption that Executive Branch decisions—especially those affecting the rights and liabilities of parties to litigation—are subject to judicial review. *De Martinez v. Lamagno*, 515 U.S. 417, 424 (1995); *accord Blumberger*, 115 F.4th at 1136.

## ARGUMENT

### I. ACCH Properly Removed Pursuant To 42 U.S.C. § 233(*l*)(2) To Assert Its Federal Immunity Defense

This Court has removal jurisdiction under 42 U.S.C. § 233(*l*)(2) based on its irrevocable deemed status for the relevant period. Plaintiff's arguments are contrary to the statute's text and purpose. Section 233(*l*) is a removal provision designed to ensure that federal courts—not Executive Branch officials—resolve immunity disputes under § 233(a).

A. <u>ACCH Properly Removed Under § 233(*l*)(2)</u>

As a deemed PHS employee, ACCH is entitled to removal and judicial review under § 233(*l*)(2) to adjudicate its claimed immunity. Section 233(*l*)(2) authorizes removal where, as here, the Attorney General disregards its obligation to effectuate removal under § 233(*l*)(1). Because Congress anticipated that the Attorney General would at times do so, it provided

[1] The Attorney General's notice does not indicate the date on which it received notice from HHS OGC.

§ 233(*l*)(2) as a failsafe. *See Blumberger v. Tilley*, 115 F.4th 1114, 1119 (9th Cir. 2024); *see also Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005) ("compliance" with "§ 233(*l*)(1) . . . serves to 'satisfy the provisions of subsection (c)'"). In effect, ACCH did what the Attorney General is required—but failed—to do. *See Blumberger*, 115 F.4th at 1119 (recognizing that when Attorney General "fails" to comply with its removal obligation under § 233(*l*)(1), any deemed defendant has a removal right without time limit under § 233(*l*)(2)).

Congress enacted § 233(*l*) for the benefit of deemed PHS defendants—to effectuate removal and facilitate federal judicial review, including review of the Attorney General's self-interested, and hardly infallible, decisions. *See Blumberger*, 115 F.4th at 1137 ("if one thing about § 233 is plain, it is that Congress did not plainly commit [the scope-of-employment] inquiry to the unreviewable judgment of the Attorney General"); *cf. De Martinez*, 515 U.S. at 434.

Plaintiff's assertion that *any* appearance by the Attorney General—regardless of substance—forecloses a deemed defendant from removing under § 233(*l*)(2) would turn § 233(*l*) into a jurisdictional barrier and a mechanism for the Attorney General to shield his own scope determinations from judicial scrutiny. *See* Pl.'s Mot. at 11. That reading ignores the singular purpose of § 233(*l*)(1), made clear in its second sentence: "[s]uch advice shall be deemed to satisfy the provisions of [§ 233(c)] that the Attorney General certify that an entity, officer, governing board member, employee, or contractor of the entity was acting within the scope of their employment." 42 U.S.C. § 233(*l*)(1); *See Blumberger*, 115 F.4th at 1133 (holding § 233(*l*)(1) requires Attorney General to provide "a simple up-down certification to the state court" regarding defendant's deemed PHS employee status). The required appearance is to effect removal. Congress did not hide a veto power over removal jurisdiction (and judicial review of the Attorney General's coverage decisions) in its directive that the Attorney General appear, advise, and remove. It is

implausible, and entirely unsupported by statutory text, that Congress authorized the Attorney General to unilaterally deprive deemed defendants of that same immunity.

The legislative context of the 1995 amendments further belies Plaintiff's assertion that § 233(*l*) permits the Attorney General to unilaterally foreclose federal jurisdiction. Under the FSHCAA of 1992, the HHS Secretary was required to work "in consultation with the Attorney General" when determining whether to deem a health center and its employees to be PHS employees. *See* Pub. L. No. 102-501, § 2(b), 106 Stat. 3268 (1992). Congress amended FSHCAA in 1995 to provide health centers and their personnel with greater certainty as to coverage, in part by eliminating the Attorney General's role in deeming determinations. H.R. Rep. No. 104-398, at 6; Pub. L. No. 104-73, § 5(b), 109 Stat. 777 (1995) (eliminating requirement that Secretary consult with Attorney General). Instead, the HHS Secretary was granted exclusive authority to *prospectively* confer deemed PHS status based on a health center's application submitted in advance of any events that could give rise to any claim against it. *See id.* § 5. Critically, Congress also directed that the Secretary's deeming determinations would be "final and binding" on the Secretary, Attorney General, "and other parties to any civil action or proceeding." *Id.* § 5(a)(2).

The determination referenced in § 233(*l*)(1), made "under subsections (g) and (h)," is the *deeming determination* the Secretary must make *in advance* of a specified period, based on the application required by § 233(g)(1)(D) and approved in accordance with § 233(h). 42 U.S.C. § 233(*l*)(1); *Blumberger*, 115 F.4th at 1129–30. At the time of any given lawsuit, a defendant's deemed status is certain—the Secretary either did or did not already deem the defendant to be a PHS employee for the relevant period. To provide the "simple up-down certification" contemplated by § 233(*l*)(1), the Attorney General "requires access to only two documents—the deeming notice issued by HHS and the complaint." *Blumberger*, 115 F.4th at 1133.

Here, the Secretary indisputably approved ACCH's deeming application for calendar year 2024, and the Attorney General advised the state court of ACCH's deemed status for that year. That appearance fulfilled the Attorney General's obligation under § 233(*l*)(1) to "advise such court" of the Secretary's deeming determination. Thus, "removal is necessary" even if the Attorney General believes ACCH acted outside the scope of its deemed federal employment. *Blumberger*, 115 F.4th at 1134. Nevertheless, the Attorney General failed to remove the action.

Section 233(*l*)(2) is the remedy. It ensures that when the Attorney General advises the state court of the Secretary's deeming determination but fails to remove the case, the deemed defendant has a statutory pathway to federal court. Under those circumstances, a federal court has jurisdiction to determine whether § 233(a) immunity applies following removal under § 233(*l*)(2). *Blumberger*, 115 F.4th at 1139–40.

Plaintiff's argument that the statute "permits removal only if the Attorney General fails to appear within 15 days of notification," Pl.'s Mot. at 11, is misplaced. Section 233(*l*)(2) neither prohibits removal earlier than 15 days after notifying HHS, nor requires a deemed defendant to otherwise await the Attorney General's appearance before invoking federal jurisdiction. First, Plaintiff's citation to *Mixon v. WellSpace Health*, 2025 WL 517676, at *6 (E.D. Cal. Feb. 18, 2025) omits the portion of the court's reasoning that renders its conclusion inapposite here. *See* Pl.'s Mot. at 11. Citing *Blumberger*, the court in *Mixon* expressly held that argument surrounding the premature removal was moot because "had Defendant not already removed the case, the U.S. Attorney would have been obligated to [do so]" due to the defendant's deemed status. *Id.* Second, plaintiff's reliance on *Sherman v. Sinha*, 843 F. App'x 870 (9th Cir. 2021) fares no better. There, the Ninth Circuit held that, under then-binding precedent, it lacked jurisdiction over the "appeal to the extent that it seeks review of the portions of the district court's order concerning § 233(*l*)(2)."

*Id.* at 873. The decision's remaining discussion of § 233 is dicta.[2] Moreover, while ACCH removed this case before the expiration of the 15-day period, a removal prior to the expiration of that period is not premature or defective, given that it inures to the benefit of the deemed defendant (not the Attorney General to act therein).

Similarly unavailing is Plaintiff's assertion that the Attorney General's appearance was timely because HHS did not notify the Attorney General until February 24, 2025. Pl.'s Mot. at 11. In full compliance with § 233(b), ACCH delivered the complaint to HHS on February 10, 2025. The Attorney General not only failed to appear within the 15-day period, but when it later appeared it disregarded its mandatory duty to remove under § 233(*l*)(2).

B. The Attorney General's Coverage Determination Cannot Defeat Removal Jurisdiction To Review That Decision

As explained above, *Blumberger* is clear that retaining the case in federal court and holding an immunity hearing is an appropriate remedy for the Attorney General's failure to comply with § 233(*l*)(1). "Any advice the Attorney General may give to the state court about its ultimate coverage decision *has no legal consequence*—one way or the other—under § 233(*l*)(1)." *Blumberger*, 115 F.4th at 1134 (emphasis added).

Plaintiff's attempt to use the Attorney General's non-certification as a basis for remand misapprehends the federal court's role. Section 233(*l*)(2) expressly provides that when the Attorney General fails to comply with (*l*)(1), a defendant may remove the case, and the district court "shall" hold a hearing to determine the proper forum. 42 U.S.C. § 233(*l*)(2). That determination includes resolving the scope-of-employment question—*after* removal, not before.

[2] The remaining district court cases Plaintiff cites—unpublished decisions from within the Ninth Circuit that predate *Blumberger*—are no longer good law following publication of that precedential decision.

## II. ACCH Properly Removed Pursuant To 28 U.S.C. § 1442(a)(1)

As a deemed PHS employee with absolute federal immunity, ACCH properly removed this case under 28 U.S.C. § 1442(a)(1), which affords a right of removal to "any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office." 28 U.S.C. § 1442(a)(1). The statute, and in particular the words "acting under," are to be broadly construed. *Colorado v. Symes*, 286 U.S. 510, 517 (1932); *Agyin v. Razmzan*, 986 F.3d 168, 175 (2d Cir. 2021).

ACCH, a federally-supported health center and deemed PHS employee, qualifies as a person "acting under [a federal] officer" and raises a colorable federal defense for § 1442(a)(1) removal purposes. *See Agyin*, 986 F.3d at 174–75; *see also Blumberger*, 115 F.4th at 1123; *Friedenberg v. Lane County*, 68 F.4th 1113, 1124 (9th Cir. 2023). A defendant acts under a federal officer when it acts on behalf of the federal officer under delegated authority, or "assist[s]" or "help[s] carry out" the official "duties or tasks of the federal superior." *Watson*, 551 U.S. at 152 (emphasis omitted); *accord Jacks v. Meridian Res. Co., LLC*, 701 F.3d 1224, 1230 (8th Cir. 2012), *overruled on other grounds by BP P.L.C.*, 141 S. Ct. at 1538. A defendant seeking removal as "a person acting under" a federal officer must establish that: (1) the defendant acted under the direction of a federal officer, (2) there exists a causal connection between the defendant's conduct and the official authority, (3) the defendant raises a colorable federal defense, and (4) the defendant is a person within the meaning of the statute. *Jacks*, 701 F.3d at 1230.

In *Agyin*, the Second Circuit endorsed removal under § 1442(a)(1) where, as here, a deemed PHS employee claimed § 233(a) immunity as a federal defense. *See* 986 F.3d at 174. Applying the Supreme Court's instruction that federal officer removals "be liberally construed," and that courts must "credit [the d]efendants' theory of the case" in assessing its jurisdiction, *Agyin* held that a

deemed PHS defendant acted under a federal officer and raised a colorable federal defense (Section 233(a) immunity). *Id.* at 174–75 (citing *Jefferson Cnty. v. Acker*, 527 U.S. 423, 432 (1999)).

When ACCH provided medical services to Plaintiff (thereby collecting, generating, and triggering any duty to protect the confidential information at issue), it was acting under a federal officer. As in *Agyin*, here, ACCH received federal funding under 42 U.S.C. § 254b to provide medical care to a federally designated population; was a deemed federal employee; and operated subject to the same extensive federal requirements analyzed in *Agyin*. *Id.* at 172, 177–78. Examining FSHCAA's legislative history, the Second Circuit in *Agyin* determined that deemed PHS employees perform "a job that—in the absence of [FSHCAA] and its provision for deeming health centers and their staffs to be federal employees—the federal government would have had to perform itself," *i.e.*, "provid[ing] medical care to the indigent."[3] *Id.*

Plaintiff blatantly mischaracterizes the relationship between HHS and federally-funded health centers. See Pl.'s Mot. at 16–17. HHS provides health center grants to fulfill the "national objective" of providing "high quality health services to all American communities." S. Rep. No. 94-29, at 119 (1975), *reprinted in* 1975 U.S.C.C.A.N. 469, 581. Moreover, until 1983, the federal government deployed federal PHS employees (through NHSC) to community health centers to provide the same services in the same communities that these health centers serve today. H.R. Rep. No. 102-823(I), at 5. ACCH performs the same roles previously performed by federal employees.

[3] Prior to 1983, the federal government—through PHS employees—performed precisely the same work ACCH now performs. When considering FSHCAA, Congress noted that, historically, more than one-half of health center staff were in the National Health Service Corps ("NHSC") program. H.R. Rep. 102-823(I), at 5 (1992). Thus, until 1983, the majority of health center staff were federal employees. *See id.* ("all NHSC assignees were members of the [PHS] until 1983"); HRSA, NHSC, *NHSC Timeline*, https://nhsc.hrsa.gov/about-us/timeline (after 1983, "NHSC members are no longer federal employees.").

Moreover, ACCH has an "agency-like relationship" with HHS. The relationship between ACCH and a federal officer—namely the HHS Secretary, who has largely delegated authority to the Health Resources and Services Administration (HRSA) under 42 U.S.C. § 254b(o)—is marked by a high degree of control and agency involvement. *Cf. In re Joliet-Will Cnty. Cmty. Action Agency*, 847 F.2d 430, 432 (7th Cir. 1988) ("nature of the grantor-grantee relationship is such as to constitute the grantee in effect an agent to carry out specified tasks"). HHS dictates where a health center can exist, who the center must treat, the treatment and services its personnel must provide, the manner in which the center can charge for its services, how the center must collect payment and from whom, how it must manage its finances and accounts, and the relationships the center has with contractors and even other area providers. *See*, *e.g.*, 42 U.S.C. §§ 254b(b)(1), (b)(3), (e)(5)(D), (k)(2)(C), (k)(3)(B), (k)(3)(D), (k)(3)(E)–(F), (k)(3)(G). The relationship is also collaborative—HHS provides "technical" and other "nonfinancial assistance" to health center grantees to aid in meeting program requirements. *Id.* § 254b(l).

In terms of daily operations, HHS requires health center grantees to: provide a specific suite of healthcare services, 42 C.F.R. § 51c.102(c)(1) (enumerating required healthcare services); care for individuals who are unable to pay for services, 51c.303(u); implement income-based sliding fee and discount schedules and submit the same for agency approval, 51c.104(b)(9); describe key personnel in its requests for funds and justify the need for their positions to the agency, 51c.104(b)(4) and 51c.303(f); create and submit an annual operating budget and three-year financial management plan to the agency, 51c.303(i); and seek prior approval from the agency for any changes to its budget or project plan "whenever there is to be a significant change in the scope or nature of project activities," 51c.107(c). By virtue of its compliance with these detailed

statutory and regulatory frameworks and the Secretary's approval of ACCH's deeming application, ACCH is deemed to be an *employee* of a federal agency—namely, the PHS.[4]

Further, as *Blumberger* clearly demonstrates, ACCH has raised a colorable federal defense. There, the Ninth Circuit concluded that "HHS's [deeming] notice provides *unequivocally clear and certain support* for [the deemed physician]'s contention that he was acting 'pursuant to a federal officer's directions' when treating [the plaintiff] and that there is a 'colorable federal defense' pertaining to the medical malpractice claims." *Blumberger*, 115 F.4th at 1123 (emphasis added); *see also Friedenberg*, 68 F.4th at 1124. The decision aligns with the Supreme Court's command that the "test for removal should be broader, not narrower, than the test for official immunity." *Willingham v. Morgan,* 395 U.S. 402, 405 (1969). Plaintiff's allegations—that ACCH failed to adequately protect confidential patient information—directly address conduct for which ACCH has § 233(a) immunity. In its deeming application for FTCA coverage, ACCH must assure HHS that it will "implement and maintain systems and procedures for protecting the confidentiality of patient information and safeguarding this information against loss, destruction, or unauthorized use, consistent with federal and state requirements." *See* HHS, Health Resources and Services Administration, Calendar Year 2025 Requirements for FTCA Coverage for Health Centers and Their Covered Individuals, at 14.[5]

---

[4] Plaintiff's assertion that "[t]here is no statutory provision directly governing Defendant's data security protocol," Pl.'s Mot. at 18 n.4, is plainly incorrect and contradicted by the Complaint. 42 U.S.C. § 254b(k)(3)(C) (health center grantees "have an ongoing quality improvement system . . . that maintains the confidentiality of patient records"); Health Insurance Portability and Accountability Act ("HIPAA"), *codified at* 42 U.S.C. § 1320d *et seq.*; Compl. ¶¶ 45–58 (alleging ACCH breached duties under HIPAA and 42 U.S.C. § 17921).

[5] HHS issues a new deeming application for each calendar year. The publicly-available version is for 2026: https://bphc.hrsa.gov/sites/default/files/bphc/data-reporting/pal-2025-01.pdf.

Plaintiff argues that ACCH fails to satisfy the "causal connection" requirement of § 1442(a)(1) because the conduct alleged—the failure to secure patient data—was not specifically directed by the federal government. Pl.'s Mot. at 15–16. But that argument misstates the standard. The causal connection requirement does not require that the federal government ordered the precise conduct alleged—it is satisfied where the conduct arises from the defendant's efforts to perform its duties under federal direction or authority. *See Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007); *Durham*, 445 F.3d at 1251. Here, Plaintiff's claims arise directly from ACCH's maintenance and protection of personal health information collected in the course of delivering federally funded healthcare services.

Finally, Plaintiffs claim that ACCH "cannot use its FSHCAA status to remove under § 1442(a)" because it would "render [removal under § 233] superfluous," Pl.'s Mot. at 15, rests on a misunderstanding of both statutes. A deemed PHS employee defendant may invoke both § 233(*l*)(2) and § 1442(a)(1), because the two "separate and alternative" provisions confer distinct rights. *See Agyin*, 986 F.3d at 179–80. It is natural, and consistent with statutory purpose, to read the two provisions as complementary mechanisms to ensure a federal forum for individuals and entities asserting federal immunity. *See BP P.L.C. v. Mayor and City Council*, 593 U.S. 230 (2021) ("[A] party may assert multiple grounds for removing a case to federal court . . . .").

## III. Removal is Not Frivolous

Plaintiff's request for fees under 28 U.S.C. § 1447(c) is completely unfounded. Courts may award fees only if the removing party "lacked an objectively reasonable basis for seeking removal." *Coventry Corp. v. City of North Little Rock*, 784 F.3d 479, 483 (8th Cir. 2015). To succeed on its fee request, Plaintiff asks this Court to reach the extraordinary conclusion that

decisions of its sister circuits, as well as those of numerous district courts, are not just incorrect but objectively unreasonable.

ACCH's reliance on the same statutory framework is reasonable. ACCH raised jurisdictional arguments that have been recognized and adopted by multiple federal courts. *See, e.g.*, *Blumberger*, 115 F.4th 1114 (upholding removal by a deemed PHS entity under § 1442(a)(1) and rejecting remand where the Attorney General declined to certify scope); *Agyin*, 986 F.3d at 176–77 (recognizing deemed status under § 233 permits § 1442(a)(1) removal); *see also Krandle v. Refuah Health Ctr., Inc.*, No. 22-CV-4977, 2024 WL 1075359, at *1, 10, 13 (S.D.N.Y. Mar. 12, 2024) (applying § 233(a) immunity in data breach action, and ordering United States substituted as proper defendant in place of deemed health center); *Doe v. Neighborhood Healthcare*, No. 21-cv-1587, 2022 WL 17663520, at *8 (S.D. Cal. Sept. 8, 2022) (same).

**CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiff's Motion to Remand.

Dated: April 16, 2025

Respectfully submitted,

GAUSNELL, O'KEEFE & THOMAS, LLC

*/s/ James D. Ribaudo*
James D. Ribaudo #67232(MO)
1717 Park Avenue
St. Louis, Missouri 63104
Tel: 314.257.9807
Fax: 314.257.9801
jribaudo@gotlawstl.com

FELDESMAN LEIFER LLP

*/s/ Matthew S. Freedus*
Matthew S. Freedus* #475887(DC)
1129 20th Street, N.W., 4th Floor

Washington, DC 20036
Tel: 202.466.8960
mfreedus@feldesman.com
**Pro hac application filed*

*Counsel for East Central Missouri Behavioral Health Services, Inc. d/b/a/ Arthur Center Community Health*